UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPRING (U.S.A.) CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-08543 |
| | ) | |
| ANDREA SIKORSKI, | ) | Judge Charles P. Kocoras |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Andrea Sikorski's ("Sikorski") motion to dismiss Plaintiff Spring (U.S.A.) Corporation's ("Spring USA") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to lift the preliminary injunction in this matter. For the following reasons, the Court denies Sikorski's motions.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Spring USA's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff Spring USA is a Delaware corporation with its principal place of business in DuPage County, Illinois. It produces and distributes induction buffet servers, beverage servers, professional cookware, and induction solutions to food service equipment dealers, hotels, stadiums, restaurants, cruise ships, health care

facilities, universities, and country clubs. Defendant Sikorski is a citizen of Arizona who resides in Phoenix.

In April 2017, Spring USA hired Sikorski as a Regional Sales Manager pursuant to a signed, written agreement (the "Employment Agreement"), which stated, among other things, that:

> During the course of your employment, you will be exposed to confidential or proprietary business information of Spring USA. Enclosed is a copy of the Company's Restrictive Covenant Agreement that contains restrictions on disclosing the Company's Confidential Information and includes a one (1) year noncompete and nonsolicitation provisions, as well as an assignment of developments agreement. Signing this Restrictive Covenant as of your first day of work is a condition of employment.

Sikorski executed the Employment Agreement on April 18, 2017 and began her employment on April 24, 2017.

As referenced in the Employment Agreement, Sikorski also executed the Restrictive Covenant on April 18, 2017. This agreement stated, in relevant part:

> **Non-competition Agreement.** I acknowledge that my present duties include sales oversight and related duties throughout the United States and other countries ("Service Region"). I agree that I will not during my employment and following my termination of employment, for any reason, for a period of one (1) year thereafter…be connected as an officer, employee, agent, independent contractor, consultant, partner, shareholder or principal, with any corporation, limited liability company, partnership, proprietorship, association, or other entity or person engaged in developing, producing, designing, providing, soliciting orders for, selling, distributing or marketing products or services in any business which competes with the Company…For purposes of this section, "competes with the Company" would include any person or entity that sells or services any induction ranges, buffet servicing equipment, or cookware or other products that the Company manufactures or services to hotels, caterers, food service feeders, or restaurant operators within the

> "Service Region," and I was involved in selling such product or services or trained in these products or services while employed by the Company….

All of Spring USA's employees are bound by the confidentiality policy contained in the employee handbook. Further, employees who have access to higher level information, such as Sikorski, are required to sign specific contracts with heightened confidentiality provisions, like the Restrictive Covenant excerpted above. Based on these contractual assurances and in connection with her job responsibilities, Spring USA provided Sikorski with access to proprietary and confidential trade secret information regarding their business and strategic planning.

On December 14, 2018, Sikorski informed her supervisor at Spring USA that she received a job offer from Eastern Tabletop Manufacturing Company, Inc. ("Eastern"), a direct competitor of Spring USA that designs, sells, markets, and distributes tableware and buffet items. Sikorski stated that the job offer included a $120,000 salary, and unless Spring USA matched the salary, she would accept Eastern's offer. Sikorski's supervisor informed her that accepting the position would violate her Restrictive Covenant, which Sikorski acknowledged. However, when Spring USA did not match the salary offer, Sikorski resigned.

Shortly after her resignation, Sikorski e-mailed herself files containing Spring USA's trade secrets and other confidential and proprietary information. Among the files was a detailed excel spreadsheet containing information used to update the Board of Directors on current business and confidential opportunities; company-wide sales

data; annotated national sales pipelines; the 2019 prospective sales and projects lists; customer contacts; passwords for access to third-party websites; and Spring USA customer presentations. This information was not available from any other source.

After discovering Sikorski's actions, Spring USA confronted Sikorski. She admitted taking Spring USA's information and responded with a video of herself moving the files to the "trash" in her personal e-mail account. Spring USA then demanded that Sikorski cease and desist her violations of the Restrictive Covenant and immediately return any and all confidential and proprietary information. Sikorski did not acknowledge this communication.

The following day, Spring USA demanded that Eastern disclose and return any and all information in its possession related to Spring USA that it received from Sikorski. Spring USA further demanded that Eastern cease any interference with the Restrictive Covenant. Eastern did not acknowledge this communication.

Finally, on December 21, 2018 and December 27, 2018, Spring USA requested that Sikorski arrange for the retrieval of all company property in her possession, including its computer. Sikorski again refused to acknowledge the communications and remained in possession of Spring USA's property.

To protect their confidential information, Spring USA filed the instant complaint on December 28, 2018, alleging breach of contract, conversion, theft of trade secrets, and breach of duty of loyalty, and requesting an accounting of any Spring USA property in Sikorski's possession. On January 15, 2019, the parties filed a joint stipulation

preliminarily enjoining Sikorski from violating her Restrictive Covenant.  Sikorski now moves to lift the preliminary injunction and to dismiss Spring USA's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to any violations of the non-competition agreement.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012).  The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Spring USA need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'"  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678.

Sikorski moves the Court to lift the preliminary injunction and dismiss the counts relating to the non-competition agreement because it is overbroad and unenforceable.

In Illinois, restrictive covenants are generally disfavored, especially with respect to non-competition covenants. *Roberge v. Qualitek Int'l, Inc.*, 2002 WL 109360, at *4 (N.D. Ill. 2002). Accordingly, "courts will only enforce the provisions of a restrictive covenant if the time and geographical limitations are reasonably necessary to protect a legitimate business interest of the employer." *Id.* Though this is a heavy burden for the employer to meet, at the motion to dismiss stage "courts will only find such covenants facially invalid in extreme cases." *Am. Transp. Grp., LLC v. Power*, 2018 WL 1993204, at *4 (N.D. Ill. 2018). Otherwise, "unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record." *Id.*

Therefore, the Court must first assess whether the non-competition agreement is facially invalid. Spring USA emphasizes that the non-competition agreement is limited in several respects. The agreement only interferes if Sikorski seeks employment with an entity that (1) "sells or services any induction ranges, buffet serving equipment, or cookware or other products that the Company manufactures," (2) "to hotels, caterers, food service feeders, or restaurant operators," and (3) that Sikorski was involved in selling or trained in these products while employed by Spring USA. Considering those three limitations together, "the agreement only applies if Sikorski attempts to work for an entity that manufactures directly competing products that Sikorski herself had direct knowledge of during her time at [Spring USA], ***and*** if that company tries to sell those products to the same limited market." Moreover, this prohibition is only in effect for

one year after the termination of Sikorski's employment, which this Court has held to be a reasonable time limitation. *Telxon Corp. v. Hoffman*, 720 F.Supp. 657, 663–64 (N.D. Ill. 1989). Finally, although the agreement does not have a geographic limitation, "the lack of a geographical restriction does not *automatically* invalidate a post-employment restraint where the geographical prohibition is qualified by an activity restraint." *Roberge*, 2002 WL 109360, at *4. Given the aforementioned limitations on the activities restricted by the agreement, the Court finds that the lack of a geographic restriction is not enough to doom the non-competition agreement. Accordingly, this is not among the "extreme cases" where the Court labels a non-competition agreement facially invalid. *Am. Transp. Grp., LLC*, 2018 WL 1993204, at *4.

As the non-competition agreement is not "patently unreasonable," the Court deems it wise to develop the evidentiary record before engaging in the fact-intensive enforceability inquiry. *Am. Transp. Grp., LLC*, 2018 WL 1993204, at *4. This Court has repeatedly taken this approach when presented with the enforceability question at the motion to dismiss stage. *Id.*; *Maximum Indep. Brokerage, LLC v. Smith*, 218 F.Supp.3d 630, 637 (N.D. Ill. 2016) ("[T]he reasonableness of a restrictive covenant is determined based on the totality of the facts and circumstances of the individual case. …Courts in this district have found that such a fact-based determination is not appropriate at the motion to dismiss stage.") (internal quotation marks omitted); *Bankers Life & Cas. Co. v. Miller*, 2015 WL 515965, at *5 (N.D Ill. 2015) ("Courts have repeatedly held that reasonableness cannot be determined at the motion-to-dismiss

7

stage."); *Instant Tech., LLC v. DeFazio*, 2012 WL 2567033, at *6–7 (N.D. Ill. 2012) ("The court thus cannot evaluate the reasonableness of a restrictive covenant until it can consider all of the relevant facts."); *Nortek Prod. Ltd. v. FNA Grp., Inc.*, 2011 WL 2110043, at *4 (N.D. Ill. 2011) ("[W]hether such restrictions are reasonable in this case requires the Court to make a fact-based determination that is not appropriate at the motion-to-dismiss stage."); *AutoMed Techs., Inc. v. Eller*, 160 F.Supp.2d 915, 923 (N.D. Ill. 2001) ("They require the court to assess the restrictions' reasonableness, including the legitimacy of the employer's interests, what is necessary to protect them, and the employees' ability to still earn a living in their field. This is an inherently fact-based determination that is not appropriate at the motion to dismiss stage."). Given that the Court does not have the benefit of a developed factual record, Sikorski's arguments are ill-suited for resolution at the motion to dismiss stage and are denied.

## CONCLUSION

For the aforementioned reasons, the Court denies Sikorski's motions. It is so ordered.

Dated: 05/23/2019

_____

Charles P. Kocoras
United States District Judge